# EXHIBIT "A"

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | ) | |
| COUNTY OF CHARLESTON | ) | |

MICHAEL "MICKEY" CARROLL,    )
                                )

        Plaintiff,          )

                                )

vs.                                  )

                                )

ZOOMINFO TECHNOLOGIES, INC.,   )

                                )

        Defendant.       )

_____)

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action a copy of which is hereby served upon you, and to serve a copy of your Answer to the Complaint on the subscriber at his office at 4000 Faber Place Drive, Suite 300, North Charleston, SC 29405 within thirty (30) days after the service thereof, exclusive of the day of service. If you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you.

Respectfully Submitted,

_s/Bonnie Travaglio Hunt_
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300,
N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com

_s/Peter Kaufman_
Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

March 17, 2023

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

STATE OF SOUTH CAROLINA     )     IN THE COURT OF COMMON PLEAS
                                  )
COUNTY OF CHARLESTON          )

MICHAEL "MICKEY" CARROLL,          )
                                    )
          Plaintiff,          )
                                    )
vs.          )
                                    )
ZOOMINFO TECHNOLOGIES, INC.,          )
                                    )
          Defendant.          )
_____)

## COMPLAINT
## (JURY TRIAL REQUESTED)

The Plaintiff, by and through his undersigned counsel, Bonnie Travaglio Hunt of Hunt Law LLC and Peter Kaufman of Kaufman Labor & Employment Solutions, LLC does hereby make the following claims and allegations against ZoomInfo Technologies, Inc.:

## JURISDICTION

1. That the Defendant, ZoomInfo Technologies, Inc. (hereinafter referred to as Defendant) is a business, which has operated in and affected business in South Carolina and is subject to the jurisdiction of this Honorable Court. ZoomInfo Technologies has failed to adhere to the law and even though conducting business in South Carolina has failed to maintain a registered agent.

2. That the Defendant, ZoomInfo Technologies, Inc. is an employer as defined by South Carolina Law.

3. That the Plaintiff, Michael "Mickey" Carroll (hereinafter referred to as the Plaintiff) is a resident of the State of South Carolina and within the jurisdiction of this Honorable Court.

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

4.      That all parties and subject matter herein mentioned are within the jurisdiction of

this Honorable Court.

**FACTS**

5.      The Plaintiff has extensive experience in Sales and during his career has had

several employers that continued to pay commissions long after he left

employment.

6.      The Plaintiff receive an offer of employment on August 27, 2021.  The letter set

forth the following:

*Dear Mickey, On behalf of ZoomInfo, I am pleased to extend you an offer to join
our growing team as Account Executive III, reporting to Garrett Neros, Manager,
New Business Sales. We believe you will be a valuable addition and are confident
that ZoomInfo will present a challenging and rewarding opportunity. This letter
formally presents the specifics of our offer of employment, which you should read
and carefully consider. If you accept this offer, your start date will be September
27, 2021. Your annual salary will be $90,000.00, paid semi-monthly according to
the company's standard payroll schedule and subject to withholdings and
deferrals as required by law or company policy. In addition to your base salary,
you shall be eligible for monthly performance-based commissions as outlined in
the Account Executive III Variable Compensation Plan. Under the Plan, your
annual on target incentive (OTI) will be $90,000.00 over a 12-month period.
Accordingly, under the overall compensation plan proposed herein, your total
annual on target earnings (OTE) at quota will be $180,000.00.*

*During your first 3 months in this role, you will be eligible to earn the greater of
1) a guaranteed minimum commission equal to your monthly variable OTI or 2)
the commission earnings outlined in the Variable Compensation Plan. Should you
earn more than the guaranteed minimum amount from your commissions in a
month, then that higher earned commission amount will be the amount paid. You
will not be able to earn both the guarantee and a commission higher than the
guarantee during this ramp period. If your first day is on or before the 15th of the
month, you will earn your first guaranteed minimum commission payment for that
calendar month. If your first day is on or after the 16th of the month, the first
guaranteed minimum commission payment will be earned in the subsequent
month. All guaranteed minimum commission payments are payable in the
calendar month following the month in which they are earned.*

*If you are not an active employee of the Company during the scheduled payment
date, the guarantee will not be paid.*

*Subject to the discretion and approval of the Company and the due execution of
agreements in a form acceptable to the Company, you will receive an equity*

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

award under the Company's 2020 Omnibus Incentive Plan (the "OIP") consisting of restricted stock units ("RSUs") in an amount intended to deliver $20,000 based on the market value of the Company's Class A common stock at the time of grant. Your equity award will be made effective as of the Company's first quarterly equity grant date after your start date. Your equity award will initially be unvested and will be scheduled to vest over a four-year period, subject to your continued employment with the Company at the applicable vesting dates. 25% of the RSUs will be scheduled to vest on the first anniversary of the grant date, and the remainder will be scheduled to vest in equal quarterly installments over the remaining three-year period. This is a high-level summary and your grant will be subject to all of the terms and conditions of the Company's organizational documents, the OIP and the terms and conditions of your award documents.

You will also be eligible to receive future equity awards under the OIP at a level appropriate for your seniority and performance as may be determined from time to time by the Company at its discretion. Any such equity awards will be subject to the due execution of appropriate agreements in a form acceptable to, and approved by, the Company. ZoomInfo offers a Flexible Time Off (FTO) policy for all exempt and salaried non-exempt employees. ZoomInfo's Flexible Time Off policy is offered with the understanding that employees should take the time off they need when they need it. Additionally, ZoomInfo offers a Sick Leave policy, which will be prorated in your first year of employment. Employees will be granted an additional 52 hours of sick leave in January of each year. More information on our FTO and Sick Leave policy can be found in the Employee Handbook.

Health, Vision, and Dental Insurance are available through UnitedHealthcare, VSP, and Delta Dental. We have an alternative Dental option through Willamette Dental for employees working out of the Vancouver, WA location. You will be eligible for medical, dental, and vision coverage on the first day of the month following the date of hire. You will be eligible to contribute to ZoomInfo's 401(k) on the first day of the month following the date of hire with a 50% match on the first 7% of contribution, vesting over 3 years. We also offer the following benefits: HSA, Dependent Care FSA, Life Insurance, AD&D, Short Term & Long-Term Disability Insurance, and Pet Insurance.

This offer is contingent on the following: (1) successful completion of background and reference checks; (2) your acceptance of certain terms regarding the protection of confidential and proprietary information, the assignment of intellectual property rights that may arise in the course of your employment, and the arbitration of any disputes between you and the Company; (3) the Company's receipt of proof of your identity and authorization to work in the United States; and (4) your acknowledgment that you have received the employee handbook. Necessary information will be sent under a separate cover.

Your employment at the Company will be "at-will." This means that you are free to resign at any time with or without cause or prior notice. Similarly, the Company is free to terminate our employment relationship with you at any time, with or without cause or prior notice. Although your job duties, title,

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

*compensation, benefits, and the Company's policies and procedures may change from time-to-time, the "at-will" nature of your employment may only be changed in a document signed by you and the CEO of the Company. Your employment with the Company is subject to ZoomInfo's general employment policies, many of which are described in the ZoomInfo employee handbook.*

*By accepting this offer, you acknowledge and agree that any materials shared with you prior to your Start Date by ZoomInfo are confidential and that you will maintain the confidentiality of such materials and not make any disclosure of such materials, or any information contained therein to any third party. In the event of any loss or unauthorized disclosure of such materials of information, you agree to promptly notify ZoomInfo.*

*We hope that you will accept our employment offer on these terms, which can be modified only in writing signed by the CEO and which supersede any prior representations or agreements, whether written or oral. We know how important it is that you understand these aspects of employment at ZoomInfo before you make a decision to join us. To accept this offer, please return one original signed copy of this letter to me at your earliest convenience, but no later than August 30, 2021.*

7. That the Plaintiff accepted employment with the Defendant as an Account Executive III on August 30, 2021. The employment agreement set forth by the Defendant has an Arbitration and Equitable Relief clause that is unenforceable under South Carolina law.

8. That the Plaintiff has never lived in Washington or had minimum contacts in Washington State. All of the Plaintiff's employment dealings were via by telephone and the internet. ZoomInfo operates in the State of South Carolina employs individuals within the State of South Carolina, however, fails to have a proper registered agent for service in the State of South Carolina.

9. That the was issued an employee handbook from ZoomInfo that set forth the policies and procedures of the Defendant.

10. The Employee Handbook set forth the following: *"We consider the employees of ZoomInfo to be our most valuable resource. This handbook communicates information that is relevant and important to you. It is intended to inform employees of our commitments to you, our*

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

*expectations, employee benefits, and the policies affecting your employment with ZoomInfo. This handbook has been created to give you a good idea of what working at ZoomInfo is all about, including our culture, policies, procedures, and surroundings. It is important that you familiarize yourself with the contents in this handbook. The policies and procedures set forth in this handbook, in conjunction with the referenced and linked policies, will enable employees and management to work together in concert to achieve efficiency and effectiveness. The objective of this Employee Handbook is to acquaint you with ZoomInfo and to provide you with a guide to ZoomInfo's policies and procedures. The use of term "employee" in this handbook and in company policies includes employees who identify as male, female, or nonbinary.*

11.     ZOOMINFO'S CULTURE

### *Code of Business Conduct and Ethics*

*Integrity, honesty and sound judgment are fundamental to the reputation and success of ZoomInfo and its subsidiaries (collectively, the "Company"). Employees must review the*
*ZoomInfo Code of Business Conduct and Ethics to ensure that all directors, officers and employees of the Company not only conduct themselves lawfully at all times, but also maintain the highest ethical standards in every aspect of their business dealings and seek to avoid even the appearance of improper behavior.  The Code of Business Conduct and Ethics serves as a guide for directors, officers, and employees of the Company when faced with legal or ethical questions, and it is the responsibility of directors, officers and employees of the Company to read carefully and understand it. The Code is not all-inclusive, however, and we do not expect the Code to answer every possible question that may come up in the course of conducting business. The Company expects directors, officers and employees of the Company to use their own reasonable judgment at all times to follow the high ethical standards to which the Company is committed. If you are concerned about an ethical situation or are not sure whether specific conduct meets the Company's standards of conduct, you are responsible for asking your supervisors or managers and, where appropriate, the Company's Human Resources Department or the General Counsel, any question that you feel is necessary to understand the Company's expectations of you.*

12.     ### *Grounds for Disciplinary Action*

*On and off the job, we expect all ZoomInfo employees to comply with the law, and treat other people with respect, honesty and courtesy. Doing what is right is our basic standard of behavior. Your decisions and actions shape our reputation at ZoomInfo. Employees must commit to act with*

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

*integrity while meeting our responsibilities. Illegal and unethical actions are unacceptable. Employees are strongly encouraged to review the ZoomInfo policy regarding Grounds for Disciplinary Action.*

**13.    PAY AND ATTENDANCE**

**Attendance and Absenteeism**
*Attendance is an essential function of each employee's job. The success of ZoomInfo depends on a team effort. We are all expected to arrive on time each work day, and to work a full scheduled work day unless otherwise authorized by your supervisor. Excessive absenteeism and tardiness seriously affect the costs and efficiency of operations, place an additional burden on employees who are in attendance, and ultimately affect our ability to provide excellent service to our customers. For this reason unauthorized absences, incidents of tardiness, or early departures should be addressed by the employee's supervisor, and depending on the circumstances, may result in discipline or termination of employment. Employees are expected to review and comply with the ZoomInfo policy regarding Attendance and Absenteeism. The company recognizes that employees may become ill or have other personal or family medical situations that prevent them from maintaining their regular attendance, and employees are expected to utilize sick leave pursuant to the company Paid Time Off and Paid Sick Leave policy. Full-Time and Part-Time Status Defined Employees who are hired and scheduled to work at least 40 hours a week are classified as full-time employees. Generally, full-time employees are eligible for all of ZoomInfo's benefit package, subject to the terms, conditions, and limitations of each benefit program set forth in this handbook and as more fully set forth on the Company benefits page.*

*Employees who are hired and regularly scheduled to work less than 40 hours a week are considered part-time employees. Regular part-time employees may be eligible for all or some of the benefits sponsored by ZoomInfo, subject to the terms, conditions and limitations of each benefit program as set forth in this handbook and as more fully set forth on the Company benefits page.*

**Exempt Employees**
*Employees whose positions meet specific criteria established by the FLSA, are classified as exempt employees. If you are classified as an exempt employee at the time you are hired, you will not be paid based on hours worked and will not be eligible for overtime pay.*

*Non-Exempt Employees (Hourly and Salaried) If you are classified as a non-exempt employee pursuant to the FLSA, you may qualify for overtime pay. Overtime is approved time worked in excess of 40 hours in a workweek, unless otherwise required by state law. All overtime must be approved in advance, in writing, by your supervisor, when appropriate prior to working overtime. At certain times the company may require you to work overtime. While advance notice is always the goal, it may not*

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

always be possible for ZoomInfo to provide it. Failure to work overtime when requested or working unauthorized overtime may result in discipline, up to and including termination of employment. An employee working approved overtime will be paid at 1.5 times the employee's regular hourly rate of pay for any approved overtime hours, except as otherwise provided by state law. Hourly non-exempt employees are paid according to the hours worked. Salaried non-exempt employees will receive an agreed weekly salary, whether or not they work 40 hours in a week. However, salaried non-exempt employees will receive overtime pay in addition to the salary for work weeks in which their approved work hours exceed 40 hours.

**Recording Hours Worked**

All hourly and salaried non-exempt employees are required to record their hours worked each day. These employees must record their time accurately and completely using Workday, and they must comply with applicable time reporting policies and procedures for their job. Exempt salary employees are not required to record their hours worked. The failure to record any time worked may result in problems associated with reporting and payroll and is subject to disciplinary action up to and including termination.

All employees are responsible for recording their sick time and paid time off in Workday. Managers are expected to record an employee's absence if the employee is not reasonably able to do so. Managers are expected to review and approve hours worked by hourly and salaried non-exempt employees no later than the morning after the pay period ends.

ZoomInfo is committed to complying in good faith with the Fair Labor Standards Act (FLSA) and correcting inadvertent, pay-related errors. ZoomInfo assigns positions, determines wages and compensates employees for overtime in accordance with state and local laws and the FLSA. If you have a question regarding your pay or any deductions from pay, please contact your supervisor or payroll@ZoomInfo.com. If you have a question regarding whether you are an exempt or non-exempt employee, please contact your supervisor or your HRBP. No employee who brings in good faith complaints to management about payroll deductions (or any other alleged wage and hour issues) will be retaliated against. Rest Breaks and Meal Periods No employee will be required to work for more than six hours during a calendar day without being afforded the opportunity to take at least a 30-minute meal break unless otherwise required by law. All employees are entitled to a paid rest period of ten (10) minutes for every four (4) hours worked. Additionally, employees are entitled to a meal period of at least 30 minutes that can start between the second (2) and fifth (5) hour of the shift. Non-exempt employees must clock out during meal breaks.

**Pay Transparency Policy**

ZoomInfo will not discharge or discriminate against employees or applicants because they have inquired about, discussed, or disclosed their

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

own pay or the pay of another employee or applicant. However, employees who have access to the compensation information of other employees or applicants as a part of their essential job functions are prohibited from disclosing the pay of other employees or applicants to individuals who do not otherwise have access to compensation information, unless the disclosure is (a) in response to a formal complaint or charge, (b) in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the employer, or (c) consistent with a legal duty to furnish information.

**Pay Period/Pay Date**

In the United States and Canada, paychecks are distributed semi-monthly electronically using Automated Clearing House (ACH) on the 15th and last day of the month with 24 pay periods per year. In all other countries, paychecks are distributed monthly. To ensure prompt electronic payment, employees should complete a payroll direct deposit form as soon as possible. Unless there are statutory regulations to the contrary, ZoomInfo requests that all employees utilize direct deposit for the payroll process. In the unlikely event that ACH is unavailable for payroll purposes, ZoomInfo will issue paper checks to employees. If a pay date lands on a holiday, paychecks will

be issued on the closest business day before the holiday.

Paychecks include salary or wages earned, less any mandatory or elected deductions. Mandatory deductions include, but are not limited to, federal, state, or local withholding tax, state paid family leave tax, social security tax, Medicare, and any other withholding required by the laws of other countries. Elected deductions are authorized by the employee and may include contributions to benefit plans or additional life insurance. Employees should notify Payroll if their paycheck appears to be inaccurate. Advances on paychecks are not permitted.

14.    *CONCLUSION*

It is the intention of ZoomInfo to fully cooperate with all applicable, federal, state and local employment laws. Nothing in this handbook is intended to, or shall be understood to, interfere with or limit any employee's rights under federal, state, or local law, including but not limited to, employees' rights to engage in protected, concerted activity under the National Labor Relations Act. For additional information or clarification about any feature of applicable state law that may apply to your employment, or if you believe any provision of the Handbook or any company policy does not fully comply with applicable law, contact HR@zoominfo.com.

15.    The Plaintiff was presented with a Code of Business Conduct and Ethics.

(Exhibit A)

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

16.  That the Plaintiff was employed with the Defendant for over a year in sales.

17.  That the sold software for the Defendant.  Based on the Plaintiff's sale of the Software the Plaintiff received a base pay plus commission.  Once the Plaintiff sold the product, the client signed the contract, agreed to payment terms the commission was considered earned under South Carolina Law and would be wages.

18.  That the Plaintiff's performance was exemplary during his employment with the Defendant.  That the Plaintiff's whole was having issues in 2022.  That the Plaintiff improved his performance by coming up with an action plan on his own.  That the Plaintiff was not counseled during his employment as to his performance until the 3rd Quarter of 2022.

19.  The Defendant changed the terms and conditions of the Plaintiff's employment.  This change in terms and conditions of his employment made it practically impossible to perform his position.  However, the Plaintiff still maintained his sales.  As a result, in that change of the terms and conditions the Defendant placed the Plaintiff on a performance Improvement Plan in order to avoid paying earned wages and commissions.

20.  The Plaintiff complained about the change in the terms and conditions of his employment by cutting off lease loads the Defendant was making the Plaintiff's job impossible to perform.  As a result of the change the Defendant placed the Plaintiff on a PIP.  The PIP expired and there was no further counseling.  The Defendant failed and refused to follow up on the PIP.  The Plaintiff believed that the PIP was over and his performance was satisfactory.

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

21.     The change in the terms and conditions was a purposeful manipulation in order avoid paying the Plaintiff certain commissions that he had earned in December and throughout his employment.

22.     The Defendant drafted its contract with unconscionable terms in order to avoid paying the Plaintiff certain earned commissions.  The Defendant has a pattern and practice of defrauding employees of their earned commissions.

23.     The Defendant purposefully terminated the Plaintiff in order to defraud the Plaintiff of commissions that were rightfully earned.  The Defendant's contract was written to avoid paying employees certain earned commissions in order to keep those commissions to themselves.   The actions were unjust enrichment.

24.     The Plaintiff had earned and was owed several commissions that were due and owing during his employment that were delayed payment schedules.   The Defendant failed and refused to pay these due and owing commissions.

25.     The Defendant violated the payment of wages act when it failed and refused to pay the Plaintiff the earned commissions that were wages.

26.     The failure to pay the Plaintiff all earned wages under the payment of wages act is a violation of the payment of wages act of South Carolina entitling the Plaintiff to wages, treble damages, attorneys' fees and costs.

27.     The Defendant terminated the Plaintiff from his employment when the Plaintiff complained about his commissions/wages and the Defendant failing to properly pay.   That the Defendant intentionally terminated the Plaintiff so that the Defendant would not have to pay the Plaintiff commissions earned and owed for from December into the next year.  That the Plaintiff was owed a substantial sum

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

of wages. That the intentional termination unjustly enriched the Defendant. The Defendant was well aware of the fact that they were terminating the Plaintiff in order to damage the Plaintiff and enrich their bottom line.

28. That, upon the Plaintiff's leaving the Defendant's employment, the Plaintiff had earned an amount of wages compensation and commission for which he had not been compensated by the Defendant, his employer.

29. That the Defendant failed and refused to pay the Plaintiff his wages and commissions that were earned and he was entitled to.

30. That, pursuant to S.C. Code section 41-10-50, the Defendant, as the Plaintiff's employers were obligated to pay the Plaintiff all of the wages due him within forty-eight (48) hours of the date of separation or by the next pay period, which could not exceed thirty (30) days from the date of separation.

31. That the Defendant failed and refused to pay the Plaintiff the wages that the Plaintiff had earned in the Defendant's employ within the time prescribed by South Carolina law.

32. That the Defendant knowingly, purposefully, and in bad faith, violated South Carolina Code Section 41-10-80(c).

33. That the Plaintiff has properly brought suit against the Defendant for damages pursuant to S.C. Code Section 41-10-80-(c).

34. That the Plaintiff is entitled to an award of damages against the Defendants, jointly and severally, in the amount of the unpaid wages, triple the amount, plus attorney's fees and costs pursuant to S.C. Code section 41-10-80(c).

35. That the Plaintiff objected to the Defendants actions.

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

36.    That the Defendant failed and refused the Plaintiff's under his contract that the Plaintiff breached the agreement to pay the Plaintiff.

37.    That the Plaintiff is entitled to the payment of commissions/wages earned for the Defendant's breach.

**FOR A FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT/BREACH OF CONTRACT FRAUDULENT**

**INTENT/DETRIMENTAL RELIANCE**

38.    That Paragraphs numbered one (1) through thirty-seven (37) are hereby incorporated verbatim.

39.    That the Defendant made a promise to the Plaintiff to follow the policies and procedures as set forth in the handbook/manual, the employment agreement, the offer letter and payment of wages act.

40.    That the Plaintiff and the Defendant entered into a contract where the Plaintiff would be entitled to the wages/commissions.

41.    That the Defendant breached the employment contract by properly paying commissions/wages.  The Defendant further committed fraudulent acts when it intentionally terminated the Plaintiff's employment to avoid paying earned wages and commissions.

42.    That the Defendant breached the contract between the Plaintiff and Defendant.

43.    That the Defendant breached the employment contract by not performing its part of the promise.

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

44.     That the Defendant wrongfully and willfully breached the employment contract with fraudulent intent in order to defraud the Plaintiff of earned wages and commissions.

45.     The Plaintiff detrimentally relied on the promises of the Defendant to pay his commission if he sought and performed his position.  The Plaintiff made certain sales and rightfully expected to be paid on those commissions.  If the plaintiff had been aware of the Defendant's intent to defraud him of his commissions/wages and wrongfully terminate his employment to keep those wages the Plaintiff would not have continued to perform his position.

46.     That the Defendant made that promise to the Plaintiff with the intent to and knowledge that the promise would induce the Plaintiff not to seek another position and that the Plaintiff would continue to make sales.

47.     That the Plaintiff reasonably relied on the Defendants promises when he suffered economic and consequential economic damages.

48.     That the Defendant represented to the Plaintiff according to the Employee Handbook, the Agreement of employment and the Offer of employment that he would be paid for work performed and commissions/earned.

49.     That the Defendant terminated the Plaintiff in order to avoid paying him between $50,000 and $90,000.00 in commissions and wages earned.

50.     That had the Defendant not induced the Plaintiff to reasonably rely on its performance he would not have suffered the foreseeable damages arising from the Defendant not giving the Plaintiff his wages/commission that were earned.

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

51.    That the Defendant was aware that the Plaintiff would incur expenses and acted to his detriment on their promises when they knowingly reneged on their promises and failed to pay his wages and wrongfully terminated him in order to keep the wages/commissions for themselves.

52.    That as a direct and proximate result of the Defendant's knowing and intentional unlawful actions, the Plaintiff suffered actual damages and consequential economic damages.

53.    That the Plaintiff is entitled to damages as a result of the Defendant's Breach of Contract/Breach of Contract with Fraudulent Intent/Detrimental Reliance to include but not limited to actual damages, compensatory damages, consequential damages, punitive damages.

### FOR A SECOND CAUSE OF ACTION

### (WRONGFUL RETENTION OF WAGES)

### SOUTH CAROLINA CODE SECTION 41-10-80

54.    Paragraphs one (1) through fifty-three (53) are hereby incorporated verbatim.

55.    That, upon the Plaintiff's leaving the Defendant's employment, the Plaintiff had earned an amount of wages/commission compensation for which he had not been compensated by the Defendants, his employers.  That many of the contracts were for future payment.

56.    That the Plaintiff was entitled to his earned wages and commissions.

57.    That the Defendant failed and refused to pay.

58.    That, pursuant to S.C. Code section 41-10-50, the Defendant, as the Plaintiff's employers were obligated to pay the Plaintiff all of the wages due him within

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

forty-eight (48) hours of the date of separation or by the next pay period, which could not exceed thirty (30) days from the date of separation.

59.    That the Defendant failed and refused to pay the Plaintiff the wages that the Plaintiff had earned in the Defendant's employ within the time prescribed by South Carolina law.

60.    That the Defendant knowingly, purposefully, and in bad faith, violated South Carolina Code Section 41-10-80(c).

61.    That the Plaintiff has properly brought suit against the Defendant for damages pursuant to S.C. Code Section 41-10-80-(c).

62.    That the Plaintiff is entitled to an award of damages against the Defendant, in the amount of the unpaid wages, triple the amount, plus attorney's fees and costs pursuant to S.C. Code section 41-10-80(c).

## FOR A THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

63.    Paragraphs one (1) through sixty-two (62) are hereby incorporated verbatim.

64.    That the Defendants were unjustly enriched by the terminating the the Plaintiff from the business.

65.    That the Defendants owe the Plaintiff for their unjust enrichment of purposefully terminating him to not pay him commissions and keep the earned wages for themselves.

66.    That the Plaintiff has suffered irreparable damage as a result of the actions of the Defendants.

67.    The Plaintiff is entitled to damages from the Defendants.

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

68. The Plaintiff is entitled to an award of damages against the Defendant, in the amount of actual, compensatory, consequential and punitive damages.

## **FOR A FOURTH CAUSE OF ACTION**

## **CONVERSION AGAINST DEFENDANTS**

69. Paragraphs one (1) through sixty-eight (68) are hereby incorporated verbatim.

70. The Defendants have converted the Plaintiff's property to their own use in violation of the law.

71. That the Plaintiff entitled to his property in the amount of wages/commissions that he earned in the employment of the Defendants.  Should the Plaintiff's wages/commissions not fall under the Payment of Wages Act the Plaintiff contends that the wages/commission were converted to use by the Defendant in violation of the law.  The Defendant specifically and intentionally converted the funds to their own use in order to avoid paying the Plaintiff's commissions in violation of public policy, common law and South Carolina Law.

72. That the Defendants have failed and refused to return the Plaintiff's property.

73. That the Defendants have converted the Plaintiff's property to their own use without the permission of the Plaintiff.

74. That the Plaintiff is entitled to actual, consequential, compensatory and punitive damages from the Defendants for their actions of theft and conversion.

## **FOR A SIXTH CAUSE OF ACTION**

## **PROMISSORY ESTOPPEL AGAINST DEFENDANT**

75. Paragraphs one (1) through seventy-five (75) are hereby incorporated verbatim.

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

76.  That the Defendant made certain promises and agreements with the Plaintiff that were clearly understood by the Plaintiff .

77.  That the Plaintiff acted and performed as agreed upon.

78.  That the Defendants breached the agreement.

79.  That the Plaintiff had the right to reasonably rely on the promises of Defendant.

80.  That the reliance on the promises of allowing of the Defendant to properly pay him, maintain his employment if he continued to properly sell which were all reasonable and expected and clearly foreseeable.

81.  That the defendant made the decision to terminate the Plaintiff from the Business without justification.

82.  That the Plaintiff was injured when the Defendant terminated his employment due to the Defendant's unconscionable and unenforceable contract under South Carolina Law.  That pursuant to the Defendant's contract the Defendant could terminate any employee at any time to avoid paying them any earned fees/wages/commission on any sale.  The Defendant developed a pattern and practice of committing this heinous act in order to avoid paying employees legitimately earned wages/commissions.

83.  That the Plaintiff has been damaged by the actions of the Defendant.

84.  That the Defendant was the cause of damage to the Plaintiff.

85.  That the Plaintiff is entitled to actual, compensatory, consequential, and punitive damages from the Defendants for their actions against the Plaintiff.

## PRAYER FOR DAMAGES

WHEREFORE, the Plaintiff prays for an award of damages against the

Defendants jointly and severally, in the amount of the following:

A.    Actual damages;

B.    Consequential damages;

C.    Compensatory damages;

D.    Reasonable Attorney's fees;

E.    Punitive Damages;

F.    Costs of this action; and

G.    Other damages such as this Honorable Court deems appropriate and just.

Respectfully Submitted,
*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300,
N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com


*s/Peter Kaufman*
Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

March 17, 2023

ELECTRONICALLY FILED - 2023 Mar 17 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

ELECTRONICALLY FILED - 2023 Apr 14 9:34 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

STATE OF SOUTH CAROLINA          )    IN THE COURT OF COMMON PLEAS
                                 )    FOR THE NINTH JUDICIAL CIRCUIT
COUNTY OF CHARLESTON             )
                                 )    C/A No.: 2023-CP-10-01332
MICHAEL "MICKEY" CARROLL,        )
                                 )
              Plaintiff,         )    **ACCEPTANCE OF SERVICE OF**
                                 )    **SUMMONS AND COMPLAINT FOR**
vs.                              )    **DEFENDANT ZOOMINFO**
                                 )    **TECHNOLOGIES, INC.**
ZOOMINFO TECHNOLOGIES, INC.,     )
                                 )
              Defendant.         )

Defendant ZoomInfo Technologies, Inc. ("ZoomInfo"), through the undersigned counsel,
hereby accepts service of the Summons and Complaint in the above-captioned matter and
stipulates that proper service of such has been made upon it in this action as of the date of this
acceptance.

This the 14th day of April, 2023.

                                        **WOMBLE BOND DICKINSON (US) LLP**

                                        *s/ Jordyn N. D'Andrea*
                                        Greg Horton, Esq. (S.C. Bar No. 11343)
                                        Jordyn N. D'Andrea, Esq. (S.C. Bar No. 104953)
                                        5 Exchange Street | P.O. Box 999 (29402)
                                        Charleston, South Carolina 29401
                                        843.720.4625 | Greg.Horton@wbd-us.com
                                        843.720.4623 | Jordyn.DAndrea@wbd-us.com

                                        *Attorneys for Defendant ZoomInfo Technologies,*
                                        *Inc.*

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

| | |
|---|---|
| STATE OF SOUTH CAROLINA   ) | IN THE COURT OF COMMON PLEAS |
| )  | |
| COUNTY OF CHARLESTON     ) | |

MICHAEL "MICKEY" CARROLL,     )
)
        Plaintiff,      )
)
vs.         )
)
ZOOMINFO TECHNOLOGIES, INC. d/b/a )
ZOOMINFO TECHNOLOGIES, LLC,    )
)
        Defendant.     )
_____ )

## <u>AMENDED COMPLAINT</u>
## <u>(JURY TRIAL REQUESTED)</u>

The Plaintiff, by and through his undersigned counsel, Bonnie Travaglio Hunt of

Hunt Law LLC and Peter Kaufman of Kaufman Labor & Employment Solutions, LLC

does hereby make the following claims and allegations against ZoomInfo Technologies,

Inc. d/b/a ZoomInfo Technologies, LLC:

### JURISDICTION

1.    That the Defendant, ZoomInfo Technologies, Inc. (hereinafter referred to as

Defendant) is a business, which has operated in and affected business in South

Carolina and is subject to the jurisdiction of this Honorable Court.  ZoomInfo

Technologies has failed to adhere to the law and even though conducting business

in South Carolina has failed to maintain a registered agent. The Defendant

ZoomInfo Technologies Inc. is registered with SEC.  The Defendant ZoomInfo

Technologies, Inc. claims that it does not have any employees.    However,

ZoomInfo Technologies, Inc. operates ZoomInfo Technologies, LLC as a

subsidiary.

1

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

2.  That the Defendant, ZoomInfo Technologies, Inc. is an employer as defined by South Carolina Law.

3.  That the Plaintiff, Michael "Mickey" Carroll (hereinafter referred to as the Plaintiff) is a resident of the State of South Carolina and within the jurisdiction of this Honorable Court.

4.  That all parties and subject matter herein mentioned are within the jurisdiction of this Honorable Court.

## FACTS

5.  The Plaintiff has extensive experience in Sales and during his career has had several employers that continued to pay commissions long after he left employment.

6.  The Plaintiff receive an offer of employment on August 27, 2021.  The offer of employment was from ZoomInfo it does not set forth Inc. or LLC. The letter set forth the following:

*Dear Mickey, On behalf of ZoomInfo, I am pleased to extend you an offer to join our growing team as Account Executive III, reporting to Garrett Neros, Manager, New Business Sales. We believe you will be a valuable addition and are confident that ZoomInfo will present a challenging and rewarding opportunity. This letter formally presents the specifics of our offer of employment, which you should read and carefully consider. If you accept this offer, your start date will be September 27, 2021. Your annual salary will be $90,000.00, paid semi-monthly according to the company's standard payroll schedule and subject to withholdings and deferrals as required by law or company policy. In addition to your base salary, you shall be eligible for monthly performance-based commissions as outlined in the Account Executive III Variable Compensation Plan. Under the Plan, your annual on target incentive (OTI) will be $90,000.00 over a 12-month period. Accordingly, under the overall compensation plan proposed herein, your total annual on target earnings (OTE) at quota will be $180,000.00.*
*During your first 3 months in this role, you will be eligible to earn the greater of 1) a guaranteed minimum commission equal to your monthly variable OTI or 2) the commission earnings outlined in the Variable Compensation Plan. Should you earn more than the guaranteed minimum amount from your commissions in a month, then that higher earned commission amount will be the amount paid. You will not be able to earn both the guarantee and a commission higher than the guarantee*

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

*during this ramp period. If your first day is on or before the 15th of the month, you will earn your first guaranteed minimum commission payment for that calendar month. If your first day is on or after the 16th of the month, the first guaranteed minimum commission payment will be earned in the subsequent month. All guaranteed minimum commission payments are payable in the calendar month following the month in which they are earned.*

*If you are not an active employee of the Company during the scheduled payment date, the guarantee will not be paid.*

*Subject to the discretion and approval of the Company and the due execution of agreements in a form acceptable to the Company, you will receive an equity award under the Company's 2020 Omnibus Incentive Plan (the "OIP") consisting of restricted stock units ("RSUs") in an amount intended to deliver $20,000 based on the market value of the Company's Class A common stock at the time of grant. Your equity award will be made effective as of the Company's first quarterly equity grant date after your start date. Your equity award will initially be unvested and will be scheduled to vest over a four-year period, subject to your continued employment with the Company at the applicable vesting dates. 25% of the RSUs will be scheduled to vest on the first anniversary of the grant date, and the remainder will be scheduled to vest in equal quarterly installments over the remaining three-year period. This is a high-level summary and your grant will be subject to all of the terms and conditions of the Company's organizational documents, the OIP and the terms and conditions of your award documents.*

*You will also be eligible to receive future equity awards under the OIP at a level appropriate for your seniority and performance as may be determined from time to time by the Company at its discretion. Any such equity awards will be subject to the due execution of appropriate agreements in a form acceptable to, and approved by, the Company. ZoomInfo offers a Flexible Time Off (FTO) policy for all exempt and salaried non-exempt employees. ZoomInfo's Flexible Time Off policy is offered with the understanding that employees should take the time off they need when they need it. Additionally, ZoomInfo offers a Sick Leave policy, which will be prorated in your first year of employment. Employees will be granted an additional 52 hours of sick leave in January of each year. More information on our FTO and Sick Leave policy can be found in the Employee Handbook.*

*Health, Vision, and Dental Insurance are available through UnitedHealthcare, VSP, and Delta Dental. We have an alternative Dental option through Willamette Dental for employees working out of the Vancouver, WA location. You will be eligible for medical, dental, and vision coverage on the first day of the month following the date of hire. You will be eligible to contribute to ZoomInfo's 401(k) on the first day of the month following the date of hire with a 50% match on the first 7% of contribution, vesting over 3 years. We also offer the following benefits: HSA, Dependent Care FSA, Life Insurance, AD&D, Short Term & Long-Term Disability Insurance, and Pet Insurance.*

*This offer is contingent on the following: (1) successful completion of background and reference checks; (2) your acceptance of certain terms regarding the protection of confidential and proprietary information, the assignment of intellectual property rights that may arise in the course of your employment, and the arbitration of any*

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

*disputes between you and the Company; (3) the Company's receipt of proof of your identity and authorization to work in the United States; and (4) your acknowledgment that you have received the employee handbook. Necessary information will be sent under a separate cover.*

*Your employment at the Company will be "at-will." This means that you are free to resign at any time with or without cause or prior notice. Similarly, the Company is free to terminate our employment relationship with you at any time, with or without cause or prior notice. Although your job duties, title, compensation, benefits, and the Company's policies and procedures may change from time-to-time, the "at-will" nature of your employment may only be changed in a document signed by you and the CEO of the Company. Your employment with the Company is subject to ZoomInfo's general employment policies, many of which are described in the ZoomInfo employee handbook.*

*By accepting this offer, you acknowledge and agree that any materials shared with you prior to your Start Date by ZoomInfo are confidential and that you will maintain the confidentiality of such materials and not make any disclosure of such materials, or any information contained therein to any third party. In the event of any loss or unauthorized disclosure of such materials of information, you agree to promptly notify ZoomInfo.*

*We hope that you will accept our employment offer on these terms, which can be modified only in writing signed by the CEO and which supersede any prior representations or agreements, whether written or oral. We know how important it is that you understand these aspects of employment at ZoomInfo before you make a decision to join us. To accept this offer, please return one original signed copy of this letter to me at your earliest convenience, but no later than August 30, 2021.*

7.    That the Plaintiff accepted employment with the Defendant as an Account Executive III on August 30, 2021.  The employment agreement set forth by the Defendant has an Arbitration and Equitable Relief clause that is unenforceable under South Carolina law.

8.    That the Plaintiff has never lived in Washington or had minimum contacts in Washington State.  All of the Plaintiff's employment dealings were via by telephone and the internet.  ZoomInfo operates in the State of South Carolina employs individuals within the State of South Carolina, however, fails to have a proper registered agent for service in the State of South Carolina.

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

9.      The Plaintiff was issued Securities Trading Policy that is titled ZOOMINFO TECHNOLOGIES, INC.  The policy sets forth policies to ZoomInfo Technologies, Inc. and its subsidiaries, their directors, officers, and employees (Collectively "*ZoomInfo Personnel*") family members of ZoomInfo Personnel and trusts, corporations and other entities controlled by any of such persons (collectively "*Insider*") must, at all times, comply with the securities laws fo the United States and all applicable jurisdictions.

10.     That the was issued an employee handbook from ZoomInfo that set forth the policies and procedures of the Defendant.  The Employee Handbook set forth the following:  *"We consider the employees of ZoomInfo to be our most valuable resource. This handbook communicates information that is relevant and important to you. It is intended to inform employees of our commitments to you, our expectations, employee benefits, and the policies affecting your employment with ZoomInfo. This handbook has been created to give you a good idea of what working at ZoomInfo is all about, including our culture, policies, procedures, and surroundings. It is important that you familiarize yourself with the contents in this handbook. The policies and procedures set forth in this handbook, in conjunction with the referenced and linked policies, will enable employees and management to work together in concert to achieve efficiency and effectiveness. The objective of this Employee Handbook is to acquaint you with ZoomInfo and to provide you with a guide to ZoomInfo's policies and procedures. The use of term "employee" in this handbook and in company policies includes employees who identify as male, female, or nonbinary.*

11.     ZOOMINFO'S CULTURE

**<u>Whistleblower Policy</u>**

*ZoomInfo's Whistleblower Policy establishes the procedures for the receipt, retention, investigation and treatment of complaints and concerns regarding accounting, internal accounting auditing, and other legal and regulatory matters regarding the company or its subsidiaries.*
*Complaints and concerns should be submitted in accordance with the Whistleblower Policy in the following manner:*
*a)  In writing to Zoominfo Technologies Inc., Attn: General Counsel, 805 Broadway Street, Suite 900, Vancouver, Washington 98660;*
*b)  By calling the Company's toll-free ethics hotline at 833-976-2033 at any time; or*

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

*c)  By submitting a form at https://www.whistleblowerservices.com/ZI
Employees are encouraged to review the Whistleblower Policy for complete
information regarding the submission, investigation, treatment, and
disposition of complaints and concerns.*

**The Same address for the report of Whistleblower Information is that
of the Corporate address of ZoomInfo, LLC.**

***Code of Business Conduct and Ethics***

*Integrity, honesty and sound judgment are fundamental to the reputation
and success of ZoomInfo and its subsidiaries (collectively, the
"Company"). Employees must review the
ZoomInfo Code of Business Conduct and Ethics to ensure that all directors,
officers and employees of the Company not only conduct themselves
lawfully at all times, but also maintain the highest ethical standards in every
aspect of their business dealings and seek to avoid even the appearance of
improper behavior.  The Code of Business Conduct and Ethics serves as a
guide for directors, officers, and employees of the Company when faced
with legal or ethical questions, and it is the responsibility of directors,
officers and employees of the Company to read carefully and understand it.
The Code is not all-inclusive, however, and we do not expect the Code to
answer every possible question that may come up in the course of
conducting business. The Company expects directors, officers and
employees of the Company to use their own reasonable judgment at all
times to follow the high ethical standards to which the Company is
committed. If you are concerned about an ethical situation or are not sure
whether specific conduct meets the Company's standards of conduct, you
are responsible for asking your supervisors or managers and, where
appropriate, the Company's Human Resources Department or the General
Counsel, any question that you feel is necessary to understand the
Company's expectations of you.*

12.     ***Grounds for Disciplinary Action***

*On and off the job, we expect all ZoomInfo employees to comply with the
law, and treat other people with respect, honesty and courtesy. Doing what
is right is our basic standard of behavior. Your decisions and actions shape
our reputation at ZoomInfo. Employees must commit to act with integrity
while meeting our responsibilities. Illegal and unethical actions are
unacceptable. Employees are strongly encouraged to review the ZoomInfo
policy regarding Grounds for Disciplinary Action.*

13.     ***PAY AND ATTENDANCE***

***Attendance and Absenteeism***

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

*Attendance is an essential function of each employee's job. The success of ZoomInfo depends on a team effort. We are all expected to arrive on time each work day, and to work a full scheduled work day unless otherwise authorized by your supervisor. Excessive absenteeism and tardiness seriously affect the costs and efficiency of operations, place an additional burden on employees who are in attendance, and ultimately affect our ability to provide excellent service to our customers. For this reason unauthorized absences, incidents of tardiness, or early departures should be addressed by the employee's supervisor, and depending on the circumstances, may result in discipline or termination of employment. Employees are expected to review and comply with the ZoomInfo policy regarding Attendance and Absenteeism. The company recognizes that employees may become ill or have other personal or family medical situations that prevent them from maintaining their regular attendance, and employees are expected to utilize sick leave pursuant to the company Paid Time Off and Paid Sick Leave policy. Full-Time and Part-Time Status Defined Employees who are hired and scheduled to work at least 40 hours a week are classified as full-time employees. Generally, full-time employees are eligible for all of ZoomInfo's benefit package, subject to the terms, conditions, and limitations of each benefit program set forth in this handbook and as more fully set forth on the Company benefits page.*

*Employees who are hired and regularly scheduled to work less than 40 hours a week are considered part-time employees. Regular part-time employees may be eligible for all or some of the benefits sponsored by ZoomInfo, subject to the terms, conditions and limitations of each benefit program as set forth in this handbook and as more fully set forth on the Company benefits page.*

***Exempt Employees***

*Employees whose positions meet specific criteria established by the FLSA, are classified as exempt employees. If you are classified as an exempt employee at the time you are hired, you will not be paid based on hours worked and will not be eligible for overtime pay.*

*Non-Exempt Employees (Hourly and Salaried) If you are classified as a non-exempt employee pursuant to the FLSA, you may qualify for overtime pay. Overtime is approved time worked in excess of 40 hours in a workweek, unless otherwise required by state law. All overtime must be approved in advance, in writing, by your supervisor, when appropriate prior to working overtime. At certain times the company may require you to work overtime. While advance notice is always the goal, it may not always be possible for ZoomInfo to provide it. Failure to work overtime when requested or working unauthorized overtime may result in discipline, up to and including termination of employment. An employee working approved overtime will be paid at 1.5 times the employee's regular hourly rate of pay for any approved overtime hours, except as otherwise provided by state law. Hourly non-exempt employees are paid according to the hours worked. Salaried non-exempt employees will receive an agreed weekly salary, whether or not*

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

they work 40 hours in a week. However, salaried non-exempt employees will receive overtime pay in addition to the salary for work weeks in which their approved work hours exceed 40 hours.

**Recording Hours Worked**

All hourly and salaried non-exempt employees are required to record their hours worked each day. These employees must record their time accurately and completely using Workday, and they must comply with applicable time reporting policies and procedures for their job. Exempt salary employees are not required to record their hours worked. The failure to record any time worked may result in problems associated with reporting and payroll and is subject to disciplinary action up to and including termination.

All employees are responsible for recording their sick time and paid time off in Workday. Managers are expected to record an employee's absence if the employee is not reasonably able to do so. Managers are expected to review and approve hours worked by hourly and salaried non-exempt employees no later than the morning after the pay period ends.

ZoomInfo is committed to complying in good faith with the Fair Labor Standards Act (FLSA) and correcting inadvertent, pay-related errors. ZoomInfo assigns positions, determines wages and compensates employees for overtime in accordance with state and local laws and the FLSA. If you have a question regarding your pay or any deductions from pay, please contact your supervisor or payroll@ZoomInfo.com. If you have a question regarding whether you are an exempt or non-exempt employee, please contact your supervisor or your HRBP. No employee who brings in good faith complaints to management about payroll deductions (or any other alleged wage and hour issues) will be retaliated against. Rest Breaks and Meal Periods No employee will be required to work for more than six hours during a calendar day without being afforded the opportunity to take at least a 30-minute meal break unless otherwise required by law. All employees are entitled to a paid rest period of ten (10) minutes for every four (4) hours worked. Additionally, employees are entitled to a meal period of at least 30 minutes that can start between the second (2) and fifth (5) hour of the shift. Non-exempt employees must clock out during meal breaks.

**Pay Transparency Policy**

ZoomInfo will not discharge or discriminate against employees or applicants because they have inquired about, discussed, or disclosed their own pay or the pay of another employee or applicant. However, employees who have access to the compensation information of other employees or applicants as a part of their essential job functions are prohibited from disclosing the pay of other employees or applicants to individuals who do not otherwise have access to compensation information, unless the disclosure is (a) in response to a formal complaint or charge, (b) in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the employer, or (c) consistent with a legal duty to furnish information.

**Pay Period/Pay Date**

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

*In the United States and Canada, paychecks are distributed semi-monthly electronically using Automated Clearing House (ACH) on the 15th and last day of the month with 24 pay periods per year. In all other countries, paychecks are distributed monthly. To ensure prompt electronic payment, employees should complete a payroll direct deposit form as soon as possible. Unless there are statutory regulations to the contrary, ZoomInfo requests that all employees utilize direct deposit for the payroll process. In the unlikely event that ACH is unavailable for payroll purposes, ZoomInfo will issue paper checks to employees. If a pay date lands on a holiday, paychecks will*
*be issued on the closest business day before the holiday.*
*Paychecks include salary or wages earned, less any mandatory or elected deductions. Mandatory deductions include, but are not limited to, federal, state, or local withholding tax, state paid family leave tax, social security tax, Medicare, and any other withholding required by the laws of other countries. Elected deductions are authorized by the employee and may include contributions to benefit plans or additional life insurance. Employees should notify Payroll if their paycheck appears to be inaccurate. Advances on paychecks are not permitted.*

14.    *CONCLUSION*

*It is the intention of ZoomInfo to fully cooperate with all applicable, federal, state and local employment laws. Nothing in this handbook is intended to, or shall be understood to, interfere with or limit any employee's rights under federal, state, or local law, including but not limited to, employees' rights to engage in protected, concerted activity under the National Labor Relations Act. For additional information or clarification about any feature of applicable state law that may apply to your employment, or if you believe any provision of the Handbook or any company policy does not fully comply with applicable law, contact HR@zoominfo.com.*

15.    The Plaintiff was presented with a Code of Business Conduct and Ethics which was from ZoomInfo Technologies, Inc.  (Exhibit A)

16.    That the Plaintiff was employed with the Defendant for over a year in sales.

17.    That the sold software for the Defendant.  Based on the Plaintiff's sale of the Software the Plaintiff received a base pay plus commission.  Once the Plaintiff sold the product, the client signed the contract, agreed to payment terms the commission was considered earned under South Carolina Law and would be wages.

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

18.    That the Plaintiff's performance was exemplary during his employment with the Defendant.  That the Plaintiff's whole was having issues in 2022.  That the Plaintiff improved his performance by coming up with an action plan on his own.  That the Plaintiff was not counseled during his employment as to his performance until the 3rd Quarter of 2022.

19.    The Defendant changed the terms and conditions of the Plaintiff's employment. This change in terms and conditions of his employment made it practically impossible to perform his position.  However, the Plaintiff still maintained his sales. As a result, in that change of the terms and conditions the Defendant placed the Plaintiff on a performance Improvement Plan in order to avoid paying earned wages and commissions.

20.    The Plaintiff complained about the change in the terms and conditions of his employment by cutting off lease loads the Defendant was making the Plaintiff's job impossible to perform.  As a result of the change the Defendant placed the Plaintiff on a PIP.  The PIP expired and there was no further counseling.  The Defendant failed and refused to follow up on the PIP.  The Plaintiff believed that the PIP was over and his performance was satisfactory.

21.    The change in the terms and conditions was a purposeful manipulation in order avoid paying the Plaintiff certain commissions that he had earned in December and throughout his employment.

22.    The Defendant drafted its contract with unconscionable terms in order to avoid paying the Plaintiff certain earned commissions.  The Defendant has a pattern and practice of defrauding employees of their earned commissions.

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

23. The Defendant purposefully terminated the Plaintiff in order to defraud the Plaintiff of commissions that were rightfully earned. The Defendant's contract was written to avoid paying employees certain earned commissions in order to keep those commissions to themselves. The actions were unjust enrichment.

24. The Plaintiff had earned and was owed several commissions that were due and owing during his employment that were delayed payment schedules. The Defendant failed and refused to pay these due and owing commissions.

25. The Defendant violated the payment of wages act when it failed and refused to pay the Plaintiff the earned commissions that were wages.

26. The failure to pay the Plaintiff all earned wages under the payment of wages act is a violation of the payment of wages act of South Carolina entitling the Plaintiff to wages, treble damages, attorneys' fees and costs.

27. The Defendant terminated the Plaintiff from his employment when the Plaintiff complained about his commissions/wages and the Defendant failing to properly pay. That the Defendant intentionally terminated the Plaintiff so that the Defendant would not have to pay the Plaintiff commissions earned and owed for from December into the next year. That the Plaintiff was owed a substantial sum of wages. That the intentional termination unjustly enriched the Defendant. The Defendant was well aware of the fact that they were terminating the Plaintiff in order to damage the Plaintiff and enrich their bottom line.

28. That, upon the Plaintiff's leaving the Defendant's employment, the Plaintiff had earned an amount of wages compensation and commission for which he had not been compensated by the Defendant, his employer.

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

29.    That the Defendant failed and refused to pay the Plaintiff his wages and commissions that were earned and he was entitled to.

30.    That, pursuant to S.C. Code section 41-10-50, the Defendant, as the Plaintiff's employers were obligated to pay the Plaintiff all of the wages due him within forty-eight (48) hours of the date of separation or by the next pay period, which could not exceed thirty (30) days from the date of separation.

31.    That the Defendant failed and refused to pay the Plaintiff the wages that the Plaintiff had earned in the Defendant's employ within the time prescribed by South Carolina law.

32.    That the Defendant knowingly, purposefully, and in bad faith, violated South Carolina Code Section 41-10-80(c).

33.    That the Plaintiff has properly brought suit against the Defendant for damages pursuant to S.C. Code Section 41-10-80-(c).

34.    That the Plaintiff is entitled to an award of damages against the Defendants, jointly and severally, in the amount of the unpaid wages, triple the amount, plus attorney's fees and costs pursuant to S.C. Code section 41-10-80(c).

35.    That the Plaintiff objected to the Defendants actions.

36.    That the Defendant failed and refused the Plaintiff's under his contract that the Plaintiff breached the agreement to pay the Plaintiff.

37.    That the Plaintiff is entitled to the payment of commissions/wages earned for the Defendant's breach.

## **FOR A FIRST CAUSE OF ACTION**

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

### BREACH OF CONTRACT/BREACH OF CONTRACT FRAUDULENT INTENT/DETRIMENTAL RELIANCE

38.    That Paragraphs numbered one (1) through thirty-seven (37) are hereby incorporated verbatim.

39.    That the Defendant made a promise to the Plaintiff to follow the policies and procedures as set forth in the handbook/manual, the employment agreement, the offer letter and payment of wages act.

40.    That the Plaintiff and the Defendant entered into a contract where the Plaintiff would be entitled to the wages/commissions.

41.    That the Defendant breached the employment contract by properly paying commissions/wages.  The Defendant further committed fraudulent acts when it intentionally terminated the Plaintiff's employment to avoid paying earned wages and commissions.

42.    That the Defendant breached the contract between the Plaintiff and Defendant.

43.    That the Defendant breached the employment contract by not performing its part of the promise.

44.    That the Defendant wrongfully and willfully breached the employment contract with fraudulent intent in order to defraud the Plaintiff of earned wages and commissions.

45.    The Plaintiff detrimentally relied on the promises of the Defendant to pay his commission if he sought and performed his position.  The Plaintiff made certain sales and rightfully expected to be paid on those commissions.  If the plaintiff had been aware of the Defendant's intent to defraud him of his commissions/wages and

13

wrongfully terminate his employment to keep those wages the Plaintiff would not have continued to perform his position.

46.  That the Defendant made that promise to the Plaintiff with the intent to and knowledge that the promise would induce the Plaintiff not to seek another position and that the Plaintiff would continue to make sales.

47.  That the Plaintiff reasonably relied on the Defendants promises when he suffered economic and consequential economic damages.

48.  That the Defendant represented to the Plaintiff according to the Employee Handbook, the Agreement of employment and the Offer of employment that he would be paid for work performed and commissions/earned.

49.  That the Defendant terminated the Plaintiff in order to avoid paying him between $50,000 and $90,000.00 in commissions and wages earned.

50.  That had the Defendant not induced the Plaintiff to reasonably rely on its performance he would not have suffered the foreseeable damages arising from the Defendant not giving the Plaintiff his wages/commission that were earned.

51.  That the Defendant was aware that the Plaintiff would incur expenses and acted to his detriment on their promises when they knowingly reneged on their promises and failed to pay his wages and wrongfully terminated him in order to keep the wages/commissions for themselves.

52.  That as a direct and proximate result of the Defendant's knowing and intentional unlawful actions, the Plaintiff suffered actual damages and consequential economic damages.

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

53.    That the Plaintiff is entitled to damages as a result of the Defendant's Breach of Contract/Breach of Contract with Fraudulent Intent/Detrimental Reliance to include but not limited to actual damages, compensatory damages, consequential damages, punitive damages.

## FOR A SECOND CAUSE OF ACTION

## (WRONGFUL RETENTION OF WAGES)

## SOUTH CAROLINA CODE SECTION 41-10-80

54.    Paragraphs one (1) through fifty-three (53) are hereby incorporated verbatim.

55.    That, upon the Plaintiff's leaving the Defendant's employment, the Plaintiff had earned an amount of wages/commission compensation for which he had not been compensated by the Defendants, his employers.  That many of the contracts were for future payment.

56.    That the Plaintiff was entitled to his earned wages and commissions.

57.    That the Defendant failed and refused to pay.

58.    That, pursuant to S.C. Code section 41-10-50, the Defendant, as the Plaintiff's employers were obligated to pay the Plaintiff all of the wages due him within forty-eight (48) hours of the date of separation or by the next pay period, which could not exceed thirty (30) days from the date of separation.

59.    That the Defendant failed and refused to pay the Plaintiff the wages that the Plaintiff had earned in the Defendant's employ within the time prescribed by South Carolina law.

60.    That the Defendant knowingly, purposefully, and in bad faith, violated South Carolina Code Section 41-10-80(c).

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

61. That the Plaintiff has properly brought suit against the Defendant for damages pursuant to S.C. Code Section 41-10-80-(c).

62. That the Plaintiff is entitled to an award of damages against the Defendant, in the amount of the unpaid wages, triple the amount, plus attorney's fees and costs pursuant to S.C. Code section 41-10-80(c).

## FOR A THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

63. Paragraphs one (1) through sixty-two (62) are hereby incorporated verbatim.

64. That the Defendants were unjustly enriched by the terminating the the Plaintiff from the business.

65. That the Defendants owe the Plaintiff for their unjust enrichment of purposefully terminating him to not pay him commissions and keep the earned wages for themselves.

66. That the Plaintiff has suffered irreparable damage as a result of the actions of the Defendants.

67. The Plaintiff is entitled to damages from the Defendants.

68. The Plaintiff is entitled to an award of damages against the Defendant, in the amount of actual, compensatory, consequential and punitive damages.

## FOR A FOURTH CAUSE OF ACTION

## CONVERSION AGAINST DEFENDANTS

69. Paragraphs one (1) through sixty-eight (68) are hereby incorporated verbatim.

70. The Defendants have converted the Plaintiff's property to their own use in violation of the law.

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

71.  That the Plaintiff entitled to his property in the amount of wages/commissions that he earned in the employment of the Defendants. Should the Plaintiff's wages/commissions not fall under the Payment of Wages Act the Plaintiff contends that the wages/commission were converted to use by the Defendant in violation of the law. The Defendant specifically and intentionally converted the funds to their own use in order to avoid paying the Plaintiff's commissions in violation of public policy, common law and South Carolina Law.

72.  That the Defendants have failed and refused to return the Plaintiff's property.

73.  That the Defendants have converted the Plaintiff's property to their own use without the permission of the Plaintiff.

74.  That the Plaintiff is entitled to actual, consequential, compensatory and punitive damages from the Defendants for their actions of theft and conversion.

## FOR A SIXTH CAUSE OF ACTION

## PROMISSORY ESTOPPEL AGAINST DEFENDANT

75.  Paragraphs one (1) through seventy-five (75) are hereby incorporated verbatim.

76.  That the Defendant made certain promises and agreements with the Plaintiff that were clearly understood by the Plaintiff.

77.  That the Plaintiff acted and performed as agreed upon.

78.  That the Defendants breached the agreement.

79.  That the Plaintiff had the right to reasonably rely on the promises of Defendant.

80.  That the reliance on the promises of allowing of the Defendant to properly pay him, maintain his employment if he continued to properly sell which were all reasonable and expected and clearly foreseeable.

81.    That the defendant made the decision to terminate the Plaintiff from the Business without justification.

82.    That the Plaintiff was injured when the Defendant terminated his employment due to the Defendant's unconscionable and unenforceable contract under South Carolina Law. That pursuant to the Defendant's contract the Defendant could terminate any employee at any time to avoid paying them any earned fees/wages/commission on any sale. The Defendant developed a pattern and practice of committing this heinous act in order to avoid paying employees legitimately earned wages/commissions.

83.    That the Plaintiff has been damaged by the actions of the Defendant.

84.    That the Defendant was the cause of damage to the Plaintiff.

85.    That the Plaintiff is entitled to actual, compensatory, consequential, and punitive damages from the Defendants for their actions against the Plaintiff.

### PRAYER FOR DAMAGES

WHEREFORE, the Plaintiff prays for an award of damages against the Defendants jointly and severally, in the amount of the following:

A.    Actual damages;

B.    Consequential damages;

C.    Compensatory damages;

D.    Reasonable Attorney's fees;

E.    Punitive Damages;

F.    Costs of this action; and

G.    Other damages such as this Honorable Court deems appropriate and just.

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

ELECTRONICALLY FILED - 2023 May 09 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001332

Respectfully Submitted,
*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300,
N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com


*s/Peter Kaufman*
Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

May 9, 2023